VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiffs,
JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS,
and WATCHDOG AI, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS, an individual, and WATCHDOG AI, INC., a California corporation,<br><br>Plaintiffs,<br>v.<br><br>PARAMOUNT GLOBAL, a Delaware corporation,<br><br>Defendant. | CASE NO: _____<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS ("Rayhbuck") and WATCHDOG AI, INC. ("Watchdog"), by and through their attorneys, Valkyrie Law Group, P.C., as and for their Complaint for Copyright Infringement against Defendant PARAMOUNT GLOBAL ("Paramount"), state as follows:

## NATURE OF THE ACTION

1. This is an action to stop Paramount's rampant infringement of Rayhbuck's copyrighted work "Laterals" (hereinafter the "Work") for commercial gain on its social media pages, and to recover damages for Paramount's willful conduct.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question) and supplemental jurisdiction over Plaintiff's State claims pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants in that, among other things, Defendants do business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District as the infringements were posted on the TikTok, Inc.'s platform known as "TikTok", whose principal place of business in the United States is located in this Judicial District at 5800 Bristol Parkway, Suite 100, Culver City, CA 90230 and because Defendants targeted consumers located in this Judicial District with its infringing activity.

4. Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

## THE PARTIES

5. Plaintiff JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS ("Rayhbuck"), is an individual and citizen of California, domiciled in Castro Valley, California.

6. Rayhbuck is an accompanist, performer, and producer specializing in drums and percussion for live and session work, dance class accompaniment, and composition.

7. Plaintiff WATCHDOG AI, INC. ("Watchdog"), is California corporation with its principal place of business is located at 106 Bennington St, San Francisco, CA 94110.

8. Watchdog is in the business of monitoring the web for unauthorized and unlicensed use of user's intellectual property on platforms such as TikTok, Instagram, and Youtube and granting licenses for such uses.

9. Plaintiff Watchdog is Rayhbuck's exclusive agent with regard to enforcing Rayhbuck's rights as copyright holder, including copyright litigation, against

unlicensed commercial usage of Rayhbuck's copyrighted works by third-party commercial businesses in order to promote, or otherwise in connection with, their brands or companies.

10. Plaintiff Watchdog is Rayhbuck's exclusive agent in connection with granting synchronization licenses for Rayhbuck's copyrighted works.

11. Defendant PARAMOUNT GLOBAL ("Paramount") is a Delaware corporation with its headquarters located at 1515 Broadway, New York, New York, 10036.

12. Paramount is a multinational media and entertainment company that produces and distributes television shows, movies, and other content through studios, networks, streaming services, live events, and merchandise.

13. Paramount's main properties include the namesake Paramount Pictures Corporation, the CBS Entertainment Group (consisting of the CBS and partially owned The CW television networks and television stations, BET Media Group (which oversees the BET and VH1 channels, among others), and other CBS-branded assets), Paramount Media Networks (consisting of U.S.-based cable television networks including MTV, Nickelodeon, Comedy Central, CMT, Paramount Network, and Showtime) and Paramount Streaming (including Paramount+ and Pluto TV) (hereinafter collectively referred to as the "Paramount Properties").

14. Paramount also has an international division that manages international versions of its pay TV networks, as well as region-specific assets including Argentina's Telefe, Chile's Chilevisión, the United Kingdom's Channel 5, and Australia's Network 10. From 2011 to 2023, the division also owned a 30% stake in the Italian Rainbow S.p.A. studio.  As of 2019, the company operates over 170 networks and reaches approximately 700 million subscribers in 180 countries.

15. Paramount also operates a social media empire for its Paramount Properties, with millions of followers across multiple social media platforms and accounts.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

16. Paramount is responsible for social media accounts associated with Paramount's owned properties and their subsidiaries (the "Social Media Pages").

## FACTS RELEVANT TO ALL COUNTS

**A. TikTok**

17. TikTok is a social media and entertainment platform that allows users to view, create, and share short videos.

18. The TikTok App is one of the world's most popular social media platforms, with nearly 1.6 billion monthly active users across the globe.

19. TikTok users can publish videos for others' viewing, including videos that they make themselves, and can apply filters and visual effects using the app's technology.

20. TikTok also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

21. Users who create accounts are given personal profile pages that display their username and posted content.

22. While TikTok's primary function involves video creation and viewing, it also contains a custom "in-app browser" that enables users to view external websites.

23. TikTok directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised product or service's website; and 2) users who have at least 1,000 followers can add links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

24. When users tap on these ads or links while using the TikTok, the in-app browser opens these links internally within the TikTok App instead of transferring them to a separate web browser on the user's device such as Google Chrome or Safari.

25. When users create videos on TikTok, they have the ability to add recommended music through the in-app music library, which includes trending audio

clips.

26. TikTok trends are viral phenomena that spread across the TikTok platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

27. These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

28. As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

29. The spread of these trends is facilitated by TikTok's algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

30. The more engaging the content, the more likely it is to appear on a user's "For You" page, thus reaching a broader audience.

31. This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

32. Corporations, seeking to capitalize on the popularity of trends, may participate in these viral challenges or meme formats by incorporating third-party copyrighted works into their videos.

33. TikTok trends frequently revolve around popular songs or audio clips, which may be copyrighted.

34. While TikTok provides a music library for users to select from, corporations often bypass proper licensing arrangements for exclusive or unlicensed use of copyrighted audio in their videos.

35. In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

**B. The Work**

36. The Work entitled "Laterals" is a sound recording which embodies a

COMPLAINT FOR COPYRIGHT INFRINGEMENT

musical composition from Plaintiff Rayhbuck's album called "Drums for Modern Dance Class (Horton Technique)," and was published on June 12, 2015.

37. The Work was registered with the U.S. Copyright Office on October 28, 2024, Registration No. SR 1-016-157.

38. Plaintiff's Work was used in a TikTok video posted by user @shelbysdanceact on February 9, 2023.

39. The video depicts the user in a dance studio performing contemporary dance while the Work plays in the background.

40. The video became viral and its sound featuring the Work was recommended in TikTok's in-app music library as a trending audio clip.

41. The original video has over 676,200 views, and the original sound was used in over 51,100 videos as part of the TikTok trend.

**C. Paramount's Infringing Videos**

42. Paramount, through its properties, participated in the TikTok trend using the Work.

43. On October 25, 2024, Paramount's property, Paramount+ Italia, posted a TikTok video on its commercial TikTok page which included the Work.

44. Paramount+ Italia has over 312,800 TikTok followers.

45. The Paramount+ Italia video featuring the Work garnered over 1.5 million plays, with over 11,000 likes, 94 shares, and 23 comments.

46. On October 22, 2024, Paramount's property, the Late Show With Stephen Colbert ("Colbert Late Show"), posted a video on its commercial TikTok page which included the Work.

47. Colbert Late Show has over 2,500,000 TikTok followers.

48. The Colbert Late Show video featuring the Work garnered over 94,000 plays, with over 12,000 likes, 490 shares, and 266 comments.

49. On October 15, 2024, Paramount's property, Nickelodeon, posted a video on its commercial TikTok page which included the Work.

50. Nickelodeon has over 15,400,000 TikTok followers.

51. The Nickelodeon video featuring the Work garnered over 28,000 plays, 541 likes, 7 shares, and 6 comments.

52. Paramount did not obtain any license or authority by Plaintiff Rayhbuck to use the Work in the TikTok videos posted on the Paramount Properties' commercial TikTok pages described above (hereinafter the "Videos").

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT

53. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

54. The Work is owned and/or controlled by Plaintiff Rayhbuck and is an original, creative work and constitute copyrightable subject matter under the Copyright Act.

55. Rayhbuck owned and controlled the copyright to the Work during the relevant times of Paramount's infringement.

56. By its actions, Paramount's creation, posting, and distribution of the Videos infringes Rayhbuck's copyright.

57. Through these unauthorized uses, Paramount has unlawfully reproduced, prepared derivative works from and/or distributed the Work in violation of at least 17 U.S.C. § 106(1), (2), and (3), without any authorization, permission, license, or consent from Rayhbuck.

58. Paramount's acts of infringement are knowing, deliberate, and in complete disregard for Rayhbuck's rights.

59. Paramount's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

60. As a direct and proximate result of Paramount's infringement of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Paramount's profits attributable to the infringement, in

amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

61.   Plaintiffs are entitled to their costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

## COUNT II

## VICARIOUS INFRINGEMENT

62.   Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

63.   If Paramount is not directly liable for the infringing Videos on social media accounts of its properties, Paramount is, at the very least, vicariously liable for the infringing Videos posted and/or created by the Paramount Properties.

64.   As described above, Paramount has the right, ability, and authority to control and supervise the creation and posting of videos created or posted by its properties.

65.   Paramount has failed to exercise its right and ability to control and supervise the infringing activity of its properties.

66.   As described above, Paramount receives a direct financial benefit from infringing videos posted by its properties, and from their use of Rayhbuck's sound recording.

67.   The Paramount Properties' exploitation of the Work in the infringing videos saves Paramount the cost of a license, increases Paramount's sales and revenue, enhances the visibility of Paramount's properties and services, and drives users that would not otherwise view Paramount's social media content to its accounts and pages that promote the Paramount brands.  Paramount's failure to take any action has caused its properties to continue to use Rayhbuck's sound recording without authorization.

68.   Plaintiffs have been damaged, and will continue to be damaged, by

Paramount's knowing, deliberate, and willful acts of vicarious infringement.

69. Plaintiffs are entitled to injunctive relief prohibiting Paramount from further acts of vicarious infringement.

70. As a direct and proximate result of Paramount's vicarious infringement of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Paramount's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

71. Plaintiffs are entitled to their costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

## COUNT III
## CONTRIBUTORY INFRINGEMENT

72. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

73. If Paramount is not directly liable for the infringing Videos on social media accounts of its properties, Paramount is, at the very least, contributorily liable for the infringing Videos posted and/or created by the Paramount Properties.

74. As described above, Paramount induced and/or materially contributed to the infringing Videos posted and/or created by Paramount Properties.

75. As described above, Paramount knew, or had reason to know, or was willfully blind that its paid properties used unlicensed copyrighted works in the infringing posts at issue because, among other things, Paramount employees closely track and monitor all social media posts that tag or otherwise mention Paramount, or any of its properties, actively reviewed infringing content created by the Paramount Properties, and upon information and belief has received specific notices sent by or on behalf of other third-party content owners or the platforms themselves.

76. To the extent that Paramount does not have actual knowledge, the systemic infringement by Paramount and its properties combined with Paramount's substantial investment in social media marketing generally, establishes that Paramount is aware of a high probability of infringement by the Paramount Properties, both consciously and intentionally.

77. Paramount's conduct constitutes willful contributory copyright infringement.

78. Plaintiffs have been damaged, and will continue to be damaged, by Plaintiff's acts of contributory infringement.

79. Plaintiffs are entitled to injunctive relief prohibiting Paramount from further acts of contributory infringement.

80. In addition, as a direct and proximate result of Paramount's contributory infringement of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Paramount's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

81. Plaintiffs are entitled to their costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in Plaintiffs' favor against Defendant Paramount:

   a. A declaration that Paramount has willfully infringed Plaintiff Rayhbuck's copyrighted sound recording in violation of the Copyright Act;
   b. A permanent injunction requiring Paramount and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and

indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act;

c. An Order requiring Paramount to render a full and complete accounting to Plaintiffs for Paramount's profits, gains, advantages, and the value of business opportunities received from its infringing activities;

d. For statutory damages pursuant to 17 U.S.C. § 504(c) for Paramount's *willful* infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

e. For an award of Plaintiffs' costs in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

f. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

g. For such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

DATED: February 25, 2025

Respectfully submitted,

**JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS and WATCHDOG AI, INC.**

 /s/ *Heather L. Blaise* 

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiffs*